August 4, 2015

CLERK OF
TEXAS COURT OF CRIMINAL APPEALS
P.O. BOX 12308
AUSTIN, TEXAS 78711

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 10 2015

Abel Acosta, Clerk

RE: APPLICANT'S ORIGINAL TRAVERSE OBJECTION IN RESPONSE TO THE COURT'S ADOPTED STATE'S MEMORANDUM, FINDINGS OF FACT AND CONCLUSIONS OF LAW

DEAR CLERK:

I AM A PRO-SE APPLICANT IN THE NUMBERED AND ENTITLED CAUSE No. C-396-009930-1005465-A. THE 396TH JUDICIAL COURT OF TARRANT COUNTY, TEXAS SIGNED ITS ORDER TO FORWARD ITS FINDINGS AND APPLICANT'S WRIT TRANSCRIPT TO THIS COURT ON JULY 23, 2015. I RECEIVED THE COURT'S ADOPTED FINDINGS ON OR ABOUT JULY 27, 2015. IN RESPONSE I PREPARD A TRAVERSE OBJECTION, ENCLOSED HEREWITH THIS LETTER, AND RESPECTFULLY REQUEST THAT IT BE FILED ALONG WITH THE COURT'S ADOPTED FINDINGS AND MY WRIT. PLEASE!

THANK YOU FOR YOUR ASSISTANCE IN THIS MATTER AT HAND.

RESPECTFULLY SUBMITTED,

X _____
JULIS PERALES, PRO-SE

NO. C-396-009930-1005465-A     83,623-01

EX PARTE

JULIS EDWARD PERALES

§
§
§
§

IN THE TEXAS COURT
OF CRIMINAL APPEALS
OF AUSTIN, TEXAS

## APPLICANT'S ORIGINAL TRAVERSE OBJECTION IN RESPONSE TO THE COURT'S ADOPTED STATE'S MEMORANDUM, FINDINGS OF FACT AND CONCLUSIONS OF LAW

UPON RECEIVING A COPY OF THE COURT'S ORDER, WHEREUPON THE COURT ADOPTED THE STATE'S MEMORANDUM, FINDINGS OF FACT AND CONCLUSIONS OF LAW, ON OR ABOUT JULY 27, 2015, APPLICANT, HAVING CONSIDERED THE RESPONSE AND RECOMMENDATIONS TO THE GROUNDS OF ERROR RAISED GIVEN BY THE STATE FOR HIS WRIT OF HABEAS CORPUS IN THE ABOVE NUMBERED AND ENTITLED CAUSE, NOW MAKES THE FOLLOWING OBJECTIONS TO THE COURT'S MEMORANDUM, FINDINGS OF FACT AND CONCLUSIONS OF LAW:

## I.
## FINDINGS OF FACT

*GENERAL FACTS*

APPLICANT AGREES WITH THE GENERAL FACTS AS ADOPTED BY THE COURT FROM THE STATE'S RESPONSE. (SEE STATE'S RESPONSE, PG. 2:1-4)

*PROSECUTORIAL MISCONDUCT* (GROUNDS ONE, TWO, AND THREE)

IN APPLICANT'S APPLICATION FOR WRIT OF HABEAS CORPUS, ARTICLE 11.07 (HEREINAFTER "WRIT") THE ISSUE OF PROSECUTORIAL MISCONDUCT WAS RAISED, WHERE APPLICANT ALLEGES THAT THE PROSECUTORS MADE STATEMENTS OUTSIDE THE SCOPE OF THE RECORD, AND FALSIFIED THE FACTS OF THE EVIDENCE, AMONG OTHER THINGS. APPLICANT ALLEGED THAT THE STATE'S ARGUMENT THAT "BIRMINGHAM AND APPLICANT _PLANNED THE ROBBERY BEFORE_

1

THEY PICKED UP QUINONES WAS ERRONEOUS. "SEE GROUND TWO OF WRIT (EMPHASIS ADDED). IN THE STATE'S FINDINGS OF FACT (PAGE 3), WHICH THE COURT ADOPTED AS IT'S OWN, IN RESPONSE TO SAID CLAIM, THE STATE SUBMITTED EXCERPTS FROM QUINONES' TESTIMONY AT TRIAL, STATING: "QUINONES TESTIFIED THAT APPLICANT AND BIRMINGHAM CAME TO HIS HOUSE ASKING HIM IF HE WANTED TO HELP ROB SOMEONE [6 RR 200]"; "QUINONES TESTIFIED THAT, WHILE IN THE CAR, THEY ALL DISCUSSED ROBBING A CLERK AT A GAS STATION [6 RR 203-04]"; AND THAT "QUINONES TESTIFIED THAT THEY DISCUSSED WHAT EVERYONE'S ROLE WAS TO BE [6 RR 203]." THUS, THE STATE CONSUMMATED, WHICH THE COURT ADOPTED, THAT "[T]HE STATE'S ARGUMENT THAT APPLICANT AND BIRMINGHAM PLANNED THE ROBBERY WAS A SUMMATION OF QUINONES' TESTIMONY." SEE STATE'S RESPONSE, PG. 3:8-12 (EMPHASIS ADDED). HOWEVER, APPLICANT HEREIN CONTENDS THAT THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS IT'S OWN, ARE INADEQUATE. THE FACT OF THIS MATTER IS, THE ISSUE OF "APPLICANT AND BIRMINGHAM PLANNED THE ROBBERY" WAS NEVER AN ISSUE IN DISPUTE, THUS, TO CONCLUDE THAT "[T]HE STATE'S ARGUMENT... WAS A SUMMATION OF QUINONES' TESTIMONY" IS INACCURATE. (STATE RESPONSE, PG. 3:12). ALSO, THE EXCERPTS FROM QUINONES' TESTIMONY, AT ITS BEST, DO NOT EVEN REMOTELY ESTABLISH HOW "THE STATE'S ARGUMENT THAT APPLICANT AND BIRMINGHAM PLANNED THE ROBBERY BEFORE THEY PICKED UP QUINONES" WAS "A SUMMATION OF QUINONES' TESTIMONY. (STATE RESPONSE, PG. 3:8-12) (EMPHASIS ADDED). THE EXCERPTS SUBMITTED, AT ITS BEST, CAN ONLY ESTABLISH THAT A ROBBERY WAS PLANNED, AS BEING A SUMMATION OF QUINONES' TESTIMONY, AND NOT BEFORE PICKING QUINONES UP, BUT AFTER. PLEASE ALLOW FOR AN EXPLANATION: THE STATE SUBMITTED IN ITS FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THAT "QUINONES TESTIFIED THAT APPLICANT AND BIRMINGHAM CAME TO HIS ~~PLACE~~ HOUSE ASKING HIM IF HE WANTED TO HELP ROB SOMEONE," TO ESTABLISH HOW "APPLICANT AND BIRMINGHAM PLAN-

2

NED THE ROBBERY <u>BEFORE</u> THEY PICKED UP QUINONES" WAS "A SUMMATION OF QUINONES' TESTIMONY." (PG. 3:9). HOWEVER, THIS PORTION OF QUINONES' TESTIMONY CLEARLY ESTABLISHES THAT UPON ARRIVING AT QUINONES' HOUSE THERE WAS INITIALLY AN INQUIRY MADE ABOUT "DOING A KICK-DOOR" WHICH WAS SAID TO MEAN "ROB A DRUG-DEALER." (RR. 6:199-200). NEXT, IN THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THE STATE SUBMITS THAT "QUINONES TESTIFIED THAT, WHILE IN THE CAR, THEY ALL DISCUSSED ROBBING A CLERK AT A GAS STATION." (PG. 3:10). THIS PORTION OF QUINONES' TESTIMONY ESTABLISHES THAT BIRMINGHAM MAKES THE FIRST MENTION OF GOING TO ROB A GAS STATION WHILE DRIVING THE CAR, FOLLOWING THE INITIAL AGREEANCE OF DOING A "KICK-DOOR," AND ALSO, QUINONES' TESTIMONY INDICATES THAT UPON BIRMINGHAM'S MENTION THEREOF, THIS IS WHEN APPLICANT MAKES A VERBAL AGREEMENT TO ROB A GAS STATION, DISPELLING ANY NOTION OF THERE BEING A SPECIFIC "PLAN IN PLACE" TO ROB A GAS STATION PRIOR TO PICKING QUINONES UP, AS SUBMITTED BY THE PROSECUTORS. (RR. 6:203). AND, FINALLY, IN THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THE STATE SUBMITS THAT "QUINONES TESTIFIED THAT THEY DISCUSSED "WHAT EVERYONE'S ROLE WAS TO BE." (PG. 3:11). THIS PORTION OF QUINONES' TESTIMONY ESTABLISHES THAT THIS DISCUSSION TOOK PLACE JUST UPON TURNING INTO THE HOTEL PARKING LOT, AGAIN INDICATING CLEARLY THAT THERE WAS NOT ANY "PLAN ALREADY IN PLACE TO ROB A GAS STATION PRIOR TO PICKING UP QUINONES, AS SUGGESTED BY THE PROSECUTORS. (RR. 6:204). IN GROUND TWO OF APPLICANT'S WRIT, APPLICANT ALLEGED THAT THE PROSECUTORS' ARGUMENT, IN THE STATE'S CLOSING ARGUMENT, THAT APPLICANT AND BIRMINGHAM HAD A SPECIFIC PLAN IN PLACE TO ROB A GAS STATION BEFORE PICKING QUINONES UP, (RR. 7:94-95; RR. 7:119), WAS NOT SUPPORTED BY THE RECORD, THUS, IS ERRONEOUS. IF ONE WAS TO POSTULATE THAT THERE WAS ALREADY

3

A PLAN IN PLACE TO ROB A GAS STATION BEFORE PICKING UP QUINONES, AND THAT THE ONLY REASON QUINONES WAS PICKED UP WAS BECAUSE APPLICANT AND BIRMINGHAM NEEDED HELP GETTING AWAY, AS THE PROSECUTORS SUBMITTED TO THE JURY, IT WOULD LEAVE TOO MUCH UNANSWERED, E.G., WHY WAS THERE AN INITIAL INQUIRY ABOUT A "KICK-DOOR"?; UPON BIRMINGHAM MENTIONING ROBBING A GAS STATION, WHY DOES APPLICANT VERBALLY AGREE TO DO SO?; WHY WAS THERE A MEETING CONDUCTED DISCUSSING WHAT EVERYONE'S ROLE WAS TO BE, RATHER THAN QUINONES JUST BEING INSTRUCTED ON WHAT HIS ROLE WAS TO BE?; IF EVERYTHING WAS ALREADY IN PLACE, WHY DID BIRMINGHAM ASK QUINONES TO LOOK FOR SPECIFIC THINGS IN THE STORE?(RR.6:206-07); AND, IF ALL THAT WAS NEEDED WAS A GET-AWAY DRIVER TO COMPLEMENT THE PLAN, WHY WOULDN'T THE PERSON, TO WHOM THE CAR BELONGED TO, BE SUFFICIENT ENOUGH FOR THAT ROLE? (RR.6: 201). QUINONES' TESTIMONY CLEARLY ESTABLISHES THIS:(1) THAT THE INITIAL PLAN, UPON COMING BY QUINONES' HOUSE TO PICK HIM UP, WAS TO GET SOME CHRISTMAS MONEY BY DOING A "KICK-DOOR," WHICH WAS SAID TO MEAN ROB A DRUG-DEALER (RR.6: 199-200); (2) AT THAT POINT, UPON PICKING QUINONES UP, THERE WASN'T A LOT OF DISCUSSION ABOUT IT (RR.7:12); (3) ROBBING A GAS STATION IS FIRST MENTIONED WHILE IN THE CAR DRIVING (RR. 6: 203); (4) THAT'S WHEN QUINONES AGREES, AND THAT'S WHEN APPLICANT AGREES, TO ROB A GAS STATION (RR.6:203); (5) THE DISCUSSION ABOUT WHAT EVERYONE'S ROLE WAS TO BE, (THIS INCLUDES APPLICANT RECEIVING INSTRUCTIONS AS TO WHAT HIS ROLE IS TO BE, TOO) WAS FIRST CONDUCTED IN THE CAR, JUST UPON ENTERING THE PARKING LOT (RR.6:204); (6) BIRMINGHAM IS THE WHO MENTIONS ROBBING A GAS STATION (RR.6:203); (7) BIRMINGHAM MENTIONS TO QUINONES WHAT TO LOOK FOR IN THE STORE (RR.6:206-07); (8) BIRMINGHAM WAS THE MASTER MIND, IT WAS HIS GUN, HIS CAR, AND ALL HIS IDEA (RR.7:20); (9) ALL APPLICANT DOES IS AGREE, AGREE TO ROB

4

A GAS STATION UPON BIRMINGHAM'S MENTION OF IT (RR.6:203), AND AGREE TO TAKE A T.V. (RR.6:209). THUS, THE STATE'S ARGUMENT THAT APPLICANT AND BIRMINGHAM HAD A PLAN IN PLACE TO ROB A GAS STATION BEFORE PICKING QUINONES UP AND ONLY PICKED HIM UP BECAUSE HELP WAS NEEDED, IS OUTSIDE THE SCOPE OF THE RECORD, THUS, ERRONEOUS, AS APPLICANT ASSERTS IN HIS WRIT. (SEE GROUND TWO). FURTHERMORE, THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THAT "[T]HE STATE'S ARGUMENT . . . WAS A SUMMATION OF QUINONES' TESTIMONY IS INACCURATE AND INEQUITABLE. (PG.3:8-12).

NEXT, IN APPLICANT'S WRIT, APPLICANT DECLARES THAT IT WAS IMPROPER FOR THE STATE, WHILE CONTRACTUALLY SPONSORING AND VOUCHING FOR THE ENTIRETY OF QUINONES' TESTIMONY, VIA A PLEA AGREEMENT, TO MAKE ANY SUCH COMMENTS, HOWEVER SLIGHT, THAT SERVE TO CHALLENGE THE CREDIBILITY OF CERTAIN PORTIONS THEREOF. (SEE GROUND THREE). IN THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, TO SUMMARIZE, THE STATE FOUND THAT "[T]HE STATE ARGUED THAT QUINONES' OPINION . . . WAS HIS OPINION BUT THAT IT WAS THE JURY'S OPINION THAT MATTERED. [7 RR.114]"; THAT "[T]HE STATE DID NOT ARGUE" THAT THE JURY "SHOULD NOT BELIEVE QUINONES. [7 RR. 115]"; AND, THAT "[T]HE STATE'S ARGUMENT "CONCERNING THE COMMENTS MADE BY THE PROSECUTOR DURING CLOSING ARGUMENT, THAT APPLICANT COMPLAINS OF IN HIS WRIT, "WAS IN RESPONSE TO DEFENSE ARGUMENT. [7 RR. 112-15]." (PG.4:15-19). APPLICANT HEREIN CONCEDES THAT THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, ARE CORRECT: THE STATE DID ARGUE THAT QUINONES' OPINION WAS HIS OPINION, BUT IT WAS THE JURY'S OPINION THAT MATTERED; THE STATE NEVER ONCE ARGUED THAT THE JURY SHOULD NOT BELIEVE QUINONES; AND, THE STATE'S ARGUMENT WAS IN RESPONSE TO DEFENSE'S ARGUMENT. HOWEVER, APPLICANT HEREIN SUGGESTS THAT THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, ACTUALLY CONCURS THE

5

VERY THING APPLICANT COMPLAINS OF IN HIS WRIT, WHEREAS, THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, DO NOT ACCOUNT FOR THE IMPROPRIETY OF THE PROSECUTOR'S CONDUCT DURING CLOSING ARGUMENT, FOR MAKING COMMENTS THAT SERVED TO CHALLENGE THE CREDIBILITY OF CERTAIN PORTIONS OF QUINONES' TESTIMONY, WHICH THE STATE VOUCHED FOR IN ITS ENTIRETY. ALLOW FOR AN EXPLANATION: QUINONES SYMBOLIZED THE STATE'S "STAR WITNESS," AND WAS CALLED TO THE STAND ON BEHALF OF THE STATE TO PROVIDE "TRUTHFUL TESTIMONY" REGARDING APPLICANT'S INVOLVEMENT IN THE CRIME, IN ACCORDANCE WITH HIS PLEA AGREEMENT, IN AN ATTEMPT TO FIND APPLICANT GUILTY OF CAPITAL MURDER UNDER LAW 7.02(b). QUINONES' "TRUTHFUL" TESTIMONY INCLUDED HIM TELLING THE JURY THAT THE MURDER WAS NOT IN FURTHERANCE OF THE CONSPIRACY, (RR.7:14-15), AND THAT THERE WASN'T ANY REASON THAT HE COULD THINK OF AS TO WHY APPLICANT SHOULD HAVE ANTICIPATED THE MURDER, (RR.7:19), WHICH ARE TWO KEY CRITICAL ELEMENTS OF LAW 7.02(b), THAT, IF DISPROVED, WOULD DISPEL THE STATE'S CASE OF APPLICANT BEING FOUND GUILTY OF CAPITAL MURDER UNDER LAW 7.02(b). APPLICANT RELIED ON QUINONES' TESTIMONY, AS HIS DEFENSE, TO PROVE HIM NOT GUILTY OF CAPITAL MURDER UNDER SAID LAW. (RR.7:100-13). THUS, WITH THE STATE SPONSORING QUINONES AS "A CREDIBLE WITNESS WHO GIVES TRUTHFUL TESTIMONY," THE DEFENSE AGREEING WITH QUINONES' TESTIMONY AS GIVEN, IT IS PALPABLE TO REASONABLY PRESUME THAT THE JURY BELIEVED QUINONES' TESTIMONY IN ITS ENTIRETY, ABSENT ANYTHING OTHERWISE CONTRADICTING IT, AS IT WAS GIVEN. THEREFORE, THE STATE'S ARGUMENT, WHICH WAS IN RESPONSE TO DEFENSE'S ARGUMENT THAT WAS IN AGREEANCE WITH QUINONES' TESTIMONY, COULD ONLY BE SAID AS SERVING TO URGE THE JURY TO DISREGARD THE "TRUTHFULNESS, OR CHALLENGE THE CREDIBILITY THEREOF, THOSE PORTIONS OF QUINONES' TESTIMONY, WHICH IS IMPROPER WHERE THE STATE IS SAID TO BE CONTRACTUALLY SPONSORING THE SAME IN ITS ENTIRETY. AGAIN, THE STATE'S FINDINGS

6

OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THAT DETERMINES THAT THE STATE'S ARGUMENT IS IN RESPONSE TO DEFENSE'S ARGUMENT, IS CORRECT. HOWEVER, APPLICANT CONCEDES THAT THE IMPROPRIETY STANDS WHERE, WITH THE DEFENSE AGREEING WITH QUINONES AND RELYING ON HIS TESTIMONY IN THEIR CLOSING ARGUMENT, THE STATE, IN RESPONSE TO THE DEFENSE, OPTS TO OFFER COMMENTS TO THE JURY THAT, IN ESSENSE, COULD ONLY BE PERCEIVED AS SERVING TO CHALLENGE THE CREDIBILITY OF, AND, URGE THE JURY TO VIEW THE EVIDENCE FROM ANOTHER PERSPECTIVE RATHER THAN BELIEVING QUINONES' TESTIMONY AS GIVEN, AS THE DEFENSE SUGGESTED THEY DO. THIS IS IMPROPER ONLY BECAUSE THE STATE SPONSORED QUINONES, THUS, HIS TESTIMONY, IN ITS ENTIRETY, YET, THESE COMMENTS COMPLAINED OF, IN ESSENCE, ARE SAYING: "WE, THE STATE, SPONSOR QUINONES AND VOUCH FOR HIS TESTIMONY ... EXCEPT FOR THESE PORTIONS THEREOF." (SEE GROUND THREE OF WRIT).

ALSO, APPLICANT HEREIN NOTES THAT THE ISSUES REGARDING THE STATE'S ARGUMENT WHERE THE PROSECUTORS, IMPROPERLY USE THE TERM "THEY" IN RELATION TO "APPLICANT AND BIRMINGHAM," AS A COUPLE, BEING THE ONES WHO LOADED A FUNCTIONING FIREARM, PLANNED A HOSTAGE, ETC.; THE STATE'S ARGUMENT THAT IMPROPERLY SUBMITTED TO THE JURY THAT THE GUN IS COCKED BEFORE APPLICANT AND BIRMINGHAM ENTER THE STORE, READY TO BE USED; AND ALSO, THE STATE'S ARGUMENT THAT DELIBERATELY FALSELY STATED TO THE JURY THAT THE VIDEO OF THE OFFENSE SHOWED APPLICANT AND BIRMINGHAM TRYING TO GET THE VICTIM TO OPEN THE REGISTER, IN AN ATTEMPT TO PROVE THAT THE MURDER WAS COMMITTED IN FURTHERANCE OF THE ROBBERY, AS PROVIDED IN APPLICANT'S WRIT, ARE NEVER ADDRESSED BY THE STATE IN ITS FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN. (SEE GROUND TWO OF WRIT)


NO EVIDENCE (GROUND FOUR)

In Applicant's Writ, Applicant complains that there is no evidence to legally support a conviction of capital murder under Law 7.02(b); to legally support a conviction the State carried a burden of having to prove every essential element of Law 7.02(b) beyond a reasonable doubt. Applicant herein contends that, though the State submitted a lot of facts regarding this Ground of Error in its Findings of Fact, which the Court adopted as its own, the facts submitted do nothing to suggest, or support, that: 1) the murder "was committed in an attempt to commit "aggravated robbery;' or, 2) that the murder was committed "in furtherance of "the aggravated robbery;' or 3) that the murder was "one that should have been anticipated as a result of carrying out" the aggravated robbery, as the application of Law 7.02(b) to the facts of the case requires. In the Findings of Fact, which the Court adopted as its own, the State submits: "The State presented the store's surveillance videotape that showed the jury the robbery and shooting"; "The jury heard Applicant's video confession that he participated in the robbery in hopes of stealing the [T.V.] so he could sell it"; and, "The jury heard Applicant's video confession that he saw his co-defendant, Birmingham, point the gun at victim and kill him"; and also, the State submitted inferences from Quinones' testimony at trial, all to establish that some evidence exists to support conviction. (Pgs. 4-5: 20-34). Applicant herein contends that "the store's surveillance videotape" of the robbery and the shooting, in correlation with testimonial evidence at trial, i.e., Detective Dishko's testimony (RR. 6: 29-65 and 91-143), plus Quinones' testimony (RR. 6: 188-240 and RR. 7: 1-29), plus Applicant's video confession (Def's Ex. 3), do not prove any element of Law 7.02(b) beyond a reasonable doubt. Applicant's video confession that "he saw his co-defendant, Birmingham, point gun at

8

VICTIM AND KILL HIM," AS SUBMITTED BY STATE (PG. 4:22), IN ITS PROPER CONTEXT IS SHOWN TO BE IN RESPONSE TO DETECTIVE DISHKO'S QUESTIONS REGARDING THE DEPICTION OF THE STILL-FRAMED PHOTOS OF THE OFFENSE, AND NOT SPECIFICALLY REGARD WHAT APPLICANT "SAW" DURING THE ACTUAL COMMISSION OF THE OFFENSE, (SEE DEF.'S EX. 3, PG. 15-18), AS THE STATE IMPLIEDLY SUGGESTS IN IT FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN. ALSO, THE INFERENCES FROM QUINONES' TESTIMONY AT TRIAL, AT BEST, ONLY ESTABLISHES THAT APPLICANT CONSPIRED TO PARTICIPATE IN AN AGGRAVATED ROBBERY, BUT, APPLICANT HEREIN CONTENDS, DOES NOTHING TO PROVIDE PROOF OF ANY ELEMENT OF LAW 7.02(b) BEYOND A REASONABLE DOUBT, ESPECIALLY WHEREAS QUINONES SPECIFICALLY TESTIFIED THAT THE MURDER WAS NOT IN FURTHERANCE OF THE ROBBERY (RR. 7:14-15), AND THAT THERE WASN'T ANY REASON HE COULD THINK OF AS TO WHY APPLICANT SHOULD HAVE ANTICIPATED THE MURDER. (RR. 7:19).

JUDICIAL MISCONDUCT (GROUND FIVE)
APPLICANT CONCEDES THAT THERE ARE NO AVAILABLE FACTS TO REFUTE THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, REGARDING THIS GROUND OF ERROR.

INEFFECTIVE ASSISTANCE OF COUNSEL (GROUND SIX AND SEVEN)
IN APPLICANT'S WRIT, THE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL IS ADDRESSED IN TWO SEPERATE GROUNDS BECAUSE APPLICANT WAS REPRESENTED BY TWO COUNSELS DURING TRIAL, HON. TIM MOORE AND HON. ROBERT FORD, AND APPLICANT COMPLAINS OF EACH INDIVIDUALLY IN TWO SEPERATE GROUNDS. HOWEVER, IN THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THE STATE APPEARS TO HAVE MERGED EACH GROUND AND ADDRESSED EACH GROUND AS ONE, WHICH APPLICANT HEREIN CONTENDS IS ERRONEOUS. (SEE PG. 6-8:37-60). THE FIRST TEN (10) FACTS SUBMITTED ARE CONCER-

9

NING MR. MOORE ONLY, AND DO NOT PERTAIN TO MR. FORD IN THE LEAST BIT, WHEREAS MR. FORD WAS NOT EVEN APPOINTED TO REPRESENT APPLICANT AT THIS STAGE OF THE ADVERSARIAL PROCEEDINGS. (SEE PG. 6-7: 37-46) ALSO (C.R. 111). APPLICANT ACKNOWLEDGES THAT MR. MOORE DID FILE AN AFFIDAVIT ADDRESSING ALLEGATIONS, AS ORDERED, AND MR. FORD, HAVING PASSED, DID NOT. HOWEVER, APPLICANT HEREIN CONTENDS, MR. MOORE CAN ONLY ADDRESS ALLEGATIONS REGARDING HIS REPRESENTATION, WHEREAS MR. MOORE CANNOT ACCURATELY ATTEST TO WHAT EXACTLY MR. FORD WAS THINKING AT THE TIME OF EACH COMPLAINED OF INSTANCE OF INEFFECTIVE ASSISTANCE OF COUNSEL; NOR CAN MR. MOORE CONFIRM WHAT MR. FORD'S "REASONABLE TRIAL STRATEGY" WAS, IF ANY, FOR HIS COMPLAINED OF ACTS AND OMISSIONS BY APPLICANT, AS APPLICANT OUTLINED IN HIS COUNTER-AFFIDAVIT. (SEE APPLICANT'S COUNTER-AFFIDAVIT TO TIM MOORE'S AFFIDAVIT). NEXT, FACT 47, ON PAGE 7 OF STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, APPEARS TO BE PERTAINING TO MR. FORD, WHEREAS MR. MOORE NEVER ONCE OFFERED AN OBJECTION THROUGHOUT THE PROCEEDINGS. THE STATE FOUND THAT "THERE WAS NO HARM" IN COUNSEL'S FAILURE TO "OBJECT TO EVERY TIME THE STATE USED 'COULD' INSTEAD OF 'SHOULD,'" WHICH AMOUNTED TO TEN (10) TIME DURING VOIR DIRE, "AS SLIDE BEFORE JURY STATED 'SHOULD'." (PG. 7:47). HOWEVER, APPLICANT HEREIN CONTENDS, THAT JUST BECAUSE THERE IS A SLIDE, SITTING SILENTLY IN THE BACKGROUND, SHOWING THE CORRECT LANGUAGE OF THE LAW, THAT DOES NOT EXCUSE A COUNSEL OF HIS DUTY TO ASSURE THAT APPLICANT RECEIVES A FAIR TRIAL BY AN IMPARTIAL JURY; I.E., A SLIDE DOES NOT PERMIT ANY COUNSEL TO JUST SIT BY AND NOT OFFER AN OBJECTION TO EVERY INSTANCE OF MISCONDUCT, ALLOWING THE STATE TO REPITITIOUSLY EMPHATICALLY MISSTATE THE LAW TO VENIREMEMBERS WHILE CONDUCTING THEIR VOIR DIRE, AND IT IS ABSURD TO SUGGEST THAT IT DOES. (RR. 4: 102-123). ALSO, IN THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THE STATE SUBMITTED

10

THAT "APPLICANT PRESENTS NO HARM REGARDING THE STATE'S USE OF 'COULD' INSTEAD OF 'SHOULD' DURING VOIR DIRE AND TRIAL."(PG. 7:49). APPLICANT CONTENDS, HEREIN, THAT IN HIS WRIT, HARM WAS MOST DEFINITELY SHOWN REGARDING STATE'S USE OF "COULD" INSTEAD OF "SHOULD", WHERE APPLICANT SUBMITTED:(1) "COULD" IS CLEARLY CONTRARY TO THE JURY CHARGE; (2) "COULD" LESSENS THE STATE'S BURDEN OF PROOF BY INJECTING A NEW MEANING TO THE APPLICATION OF LAW TO FACTS; AND, (3) THE USE OF "COULD" SERVES TO ALTER THE JURY'S PERCEPTION REGARDING WHAT THEY WERE INSTRUCTED TO BASE THEIR VERDICT ON. (SEE GROUNDS TWO AND SIX OF WRIT). FURTHER, WHERE THE STATE PROVIDED NO EVIDENCE TO ADEQUATELY PROVE EVERY ESSENTIAL ELEMENT OF LAW 7.02(b), THE STATE'S INCORRECT USAGE OF "COULD" REPITITIOUSLY, RATHER THAN THE CORRECT LANGUAGE OF "SHOULD," EVIDENTLY AFFECTED THE CORRECTNESS OF THE JURY'S VERDICT. (SEE GROUND FOUR OF WRIT). NEXT, FACTS 49-53 OF THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, ARE CONCERNING MR. FORD ALSO. (PG. 7:49-53). HEREIN, APPLICANT CONTENDS THAT JUST BECAUSE COUNSEL OBJECTED TO THE STATE'S SECOND INSTANCE OF MISCONDUCT, WHERE THE OFFENSE BEING TRIED WAS CHARACTERIZED AS A "CAPITAL MURDER" TO JURY, THAT DOES NOT EXCUSE OF HIS DUTIES NOR MAKE UP FOR HIS FAILURE TO OBJECT IN THE FIRST INSTANCE OF MISCONDUCT (RR.6:92), AS THE STATE IMPLIEDLY SUGGESTS IN FINDINGS OF FACTS, WHICH THE COURT ADOPTED AS ITS OWN. (PG. 7:50). FURTHER, THE STATE SUMITTED IN IT FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THAT "APPLICANT PRESENTS NO HARM REGARDING THE STATE'S USE OF THE TERM 'CAPITAL MURDER.'"(PG. 7:53). HOWEVER, APPLICANT HEREIN CONTENDS, UPON INSTANCE WHERE MR. FORD DID OPT TO OFFER TO OBJECT TO THE STATE'S MISCONDUCT, THE TRIAL COURT SUSTAINED GIVEN OBJECTION AND INSTRUCTED JURY TO DISREGARD SAID MISCONDUCT (RR.6:99), THUS, HARM IS REASONABLY PRESUMED AND EVIDENT. ALSO, IN HIS WRIT, APPLICANT ESTABLISHED THAT CHARACTERIZING THE OFFENSE AS A

11

"CAPITAL MURDER" INVADES THE PROVINCE OF THE JURY, I.E., ITS FOR THE JURY TO DETERMINE, DURING DELIBERATION, BASED ON ALL THE GIVEN EVIDENCE PRESENTED AT TRIAL, WHETHER THE OFFENSE COMMITTED WAS A CAPITAL MURDER, NOT FOR THE STATE, NOR ANY OTHER PARTY AT TRIAL, TO MAKE THAT CONCLUSION DURING THE PRESENTATION OF THE EVIDENCE AT TRIAL. (SEE GROUND SIX OF WRIT). NEXT, THE STATE'S FINDINGS OF FACT THAT "[T]HE STATE'S CLOSING ARGUMENT THAT APPLICANT AND BIRMINGHAM PLANNED THE ROBBERY WAS A SUMMATION OF QUINONES' TESTIMONY." (PG. 8:54), WAS REFUTED BY APPLICANT IN ABOVE ARGUMENT UNDER *PROSECUTORIAL MISCONDUCT*. NEXT, IN THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THE STATE SUBMITTED THAT: "THE STATE'S CLOSING ARGUMENT THAT MURDER WAS IN FURTHERANCE OF THE ROBBERY WAS A SUMMATION OF THE SURVEILLANCE VIDEO AND DETECTIVE DISHKO'S TESTIMONY. [6 RR. 100-02; 7 RR. 98]." (PG. 8:55). THIS FINDING IS BOTH INACCURATE AND ERRONEOUS. *FIRST OFF*, APPLICANT HEREIN CONTENDS, IN HIS WRIT, THAT THIS COMPLAINT IS IN RELATION TO COUNSEL'S FAILURE TO OBJECT WHEN THE STATE DECLARED, "... IF THE OFFENSE WAS COMMITTED IN FURTHERANCE OF THE UNLAWFUL PURPOSE, AND CLEARLY IT WAS ON THAT VIDEOTAPE, [APPLICANT AND BIRMINGHAM ARE] TRYING TO GET [VICTIM] TO OPEN THE REGISTER TO HIM THE MONEY" (RR. 7:98), TO THE JURY, IN AN ATTEMPT TO SATISFY THIS PARTICULAR ELEMENT OF LAW 7.02 (b). THE EVIDENCE OF THE VIDEO SURVEILLANCE (STATE'S EX. 14) DOES NOT, EVER, DEPICT VICTIM BEHIND THE COUNTER NOR TRYING TO OPEN THE REGISTER, NEITHER DOES IT SHOW APPLICANT TRYING TO GET VICTIM TO DO SO. (SEE GROUND TWO; ALSO RR. 6:100-04). ALSO, THE STATE'S FINDINGS, WHICH THE COURT ADOPTED AS ITS OWN, THAT MURDER BEING IN FURTHERANCE OF THE ROBBERY "WAS A ~~SURVEILLANCE~~ SUMMATION OF THE SURVEILLANCE VIDEO EVIDENCE AND DETECTIVE DISHKO'S TESTIMONY" IS ALSO INCORRECT. DURING THE VOIR DIRE OF JURY SELECTION, THE STATE GAVE SOME ILLUSTRATIVE HYPOTHETICALS OF WHAT "IN FURTHERANCE" OF, IN THIS CASE

12

ROBBERY, IS, AND THE DEFENSE GAVE A COUPLE EXAMPLES OF SAME, AND BOTH THE STATE AND DEFENSE SUGGESTED THAT MURDER IN FURTHERANCE OF, IN THIS CASE ROBBERY, MEANS: TO GET THE ROBBERY ACCOMPLISHED. (RR. 4:101-02; RR. 4:205). THE SURVEILLENCE VIDEO EVIDENCE, COUPLED WITH DISHKO'S TESTIMONY, ESTABLISHED: (1) THAT THE VICTIM'S HANDS ARE ON THE BACK OF HIS HEAD (RR. 6:103); (2) VICTIM IS NEITHER FIGHTING NOR RESISTING (RR. 6:103); AND, (3) APPLICANT, OBEYING DIRECTIVE FROM BIRMINGHAM TO "COME ON," INDICATING THAT THE ROBBERY IS DONE AND IT WAS TIME TO LEAVE, IS HEADING TOWARD EXIT, WHEREUPON, BIRMINGHAM SHOOTS VICTIM JUST BEFORE FLEEING. (RR. 6:132). HOWEVER, APPLICANT HEREIN CONTENDS THAT THE SURVEILLANCE VIDEO EVIDENCE AND/OR DETECTIVE DISHKO'S TESTIMONY NEITHER ESTABLISHES THAT APPLICANT NOR BIRMINGHAM ARE TRYING TO GET THE VICTIM TO OPEN THE REGISTER, NOR THAT THE MURDER WAS COMMITTED TO GET THE ROBBERY ACCOMPLISHED. (SEE GROUNDS TWO AND FOUR OF WRIT). NEXT, APPLICANT HEREIN CONTENDS THAT JUST BECAUSE EVIDENCE SHOWED THAT "APPLICANT TOLD BIRMINGHAM TO BE CAREFUL WITH THE GUN" (RR. 6:209-10), DOES NOT MAKE THE STATE'S CLOSING ARGUMENT, THAT "THE GUN WAS COCKED AND READY TO BE USED" (RR. 7:117), A "REASONABLE DEDUCTION FROM EVIDENCE," AS THE STATE SUGGESTED IN ITS FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN. (SEE PG. 8:56). ALSO, BECAUSE COUNSEL OFFERED AN OBJECTION TO THE SECOND INSTANCE OF THE STATE'S IMPROPER USAGE OF THE TERM "REASONABLY ANTICIPATED," AND TRIAL COURT SUSTAINED GIVEN OBJECTION AND INSTRUCTED THE JURY TO DISREGARD (RR. 7:118), THAT DOES NOT EXCUSE COUNSEL FOR HIS FAILURE TO OBJECT TO THE SAME IMPROPER USAGE OF THE TERM "REASONABLY ANTICIPATED," WHICH IS CLEARLY A MISSTATEMENT OF LAW 7.02(b), WHEN STATED IN THE FIRST INSTANCE BY THE STATE IN THEIR CLOSING ARGUMENT (RR. 7:117), AS THE STATE IMPLIEDLY SUGGESTED IN ITS FINDINGS OF FACT, WHICH THE COURT ADOPTED

13

AS ITS OWN. (SEE PG. 8:57). NEXT, IN THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THE STATE SUBMITTED THAT: "THE STATE'S USE OF THE TERM 'THEY' WAS A DEDUCTION FROM THE EVIDENCE," BUT DOESN'T SUMIT ANY REFERENCE TO ANNOTATIONS IN THE RECORD TO SUPPORT SAID FINDINGS. (SEE PG. 8:58). APPLICANT HEREIN CONTENDS THAT THE STATE'S USAGE OF THE TERM "THEY," AT THAT PARTICULAR POINT DURING THEIR CLOSING ARGUMENT, WAS ONLY TO EXPOUND ON THE IMPROPER ARGUMENT, AS OUTLINED ABOVE, THAT APPLICANT AND BIRMINGHAM ALREADY HAD A PLAN IN PLACE BEFORE PICKING UP QUINONES AND THAT THE ONLY REASON QUINONES WAS PICKED UP WAS BECAUSE A GET-AWAY DRIVER WAS NEEDED. (RR. 7:119). THE STATE IMPROPERLY DECLARED TO THE JURY THAT: "THEY GOT A FUNCTIONING FIREARM; THEY LOADED A FUNCTIONING FIREARM; THEY PLANNED FOR A HOSTAGE" (RR. 7:119), REFERENCING "THEY" AS BEING "APPLICANT AND BIRMINGHAM" COMBINED, THOUGH QUINONES HAD ALREADY TESTIFIED "TRUTHFULLY" THAT BIRMINGHAM WAS THE MASTER MIND; IT WAS BIRMINGHAM'S GUN, CAR, AND IDEA. (RR. 7:20). THUS, THE STATE'S USE OF THE TERM "THEY" IN REFERENCE TO APPLICANT AND BIRMINGHAM AS A COUPLE, GIVEN THE CONTEXT IN WHICH THE STATE ARGUED IT, IS NOT A DEDUCTION FROM THE EVIDENCE, WHEREUPON IT ACTUALLY STANDS TO CONTRADICT THE TRUTHFUL EVIDENCE THAT WAS ALREADY GIVEN. NEXT, IN THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, THE STATE SUBMITTED THAT: "COUNSEL'S DECISION ~~NOT~~ TO NOT OBJECT THROUGHOUT THE STATE'S CLOSING ARGUMENT WAS THE RESULT OF REASONABLE TRIAL STRATEGY" AND REFERENCED TO MR. MOORE'S AFFIDAVIT, PG. 9-12; AND ALSO, THAT: "HON. MOORE'S AFFIDAVIT IS CREDIBLE AND SUPPORTED BY THE RECORD." (SEE PG. 8:59-60). APPLICANT HEREIN CONTENDS THAT MR. MOORE'S STATED REASONS FOR NOT OBJECTING THROUGHOUT STATE'S CLOSING ARGUMENT, AS OFFERED IN HIS AFFIDAVIT, WAS BECAUSE HE BELIEVED THAT THE STATE'S ARGUMENT WAS PROPERLY SUPPORTED BY THE RECORD, WHICH, AS SHOWN HEREIN, IS UNTRUE.

14

ADDITIONALLY, APPLICANT CONTESTED MR. MOORE'S SWORN AFFIDAVIT, AND THE CREDIBILITY THEREOF, WITH A COUNTER-AFFIDAVIT TO ESTABLISH THAT MR. MOORE'S AFFIDAVIT IS ACTUALLY UNSUPPORTED BY THE RECORD AND IS ONLY ENDEAVORED TO MISLEAD THE COURT WITH SWORN TESTIMONY. (SEE APPLICANT'S COUNTER-AFFIDAVIT TO HON. TIM MOORE'S AFFIDAVIT)

### INADMISSIBLE EVIDENCE (GROUND EIGHT)

APPLICANT CONCEDES THAT THERE IS NO AVAILABLE FACTS TO REFUTE THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, REGARDING THIS GROUND OF ERROR. (PG. 8:61-62).

### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (GROUND NINE)

APPLICANT HEREIN CONCEDES THAT THE STATE, IN ITS FINDINGS OF FACT, WHICH THE COURT ADOPTED AS IT OWN, SUBMITTED THE EXACT SAME FACTS IN REGARDS TO THIS GROUND AS IT SUBMITTED IN REGARDS TO GROUND FOUR: NO EVIDENCE. (PG. 8-10:63-78). APPLICANT HAS, ON A FACT-BY-FACT BASIS, REFUTED THE FINDINGS SUBMITTED IN THIS GROUND IN ABOVE ARGUMENT UNDER NO EVIDENCE. (SEE NO EVIDENCE (GROUND FOUR) ABOVE).

### CRUEL AND UNUSUAL PUNISHMENT (GROUND TEN)

APPLICANT AGREES WITH STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, AS CITED IN STATE'S RESPONSE. (SEE PG. 10:79-81).

## II.
## CONCLUSIONS OF LAW

### GENERAL WRIT LAW

APPLICANT AGREES WITH THE GENERAL WRIT LAWS AS CITED IN STATE'S

15

Conclusions of Law, which the Court adopted as its own. (See Pg. 10-11:1-2).

*Prosecutorial Misconduct (Grounds One, Two, and Three)*

In his Writ, Applicant clearly and sufficiently established that the Law 7.02(b) was misstated by the State, a total number of thirteen (13) times throughout the entire record. It was misstated ten (10) times during voir dire (RR. 4:102-123); once during the trial proceedings (RR. 6:140); and twice more during closing argument. (RR. 7:117-18). Nearly every time the State made mention of the Law 7.02(b) there was a misstatement of law involved. Law 7.02(b) was the very law that the jury was charged, by the Trial Court, to return their verdict based on; it was also, in essence, the very law that the State relied on to find Applicant guilty of capital murder, whereas, the State never provided the jury with an argument, in correlation with evidence presented, that 7.02(a) was a basis in which the jury could base their verdict. The State was required to prove every essential element of 7.02(b) beyond a reasonable doubt, not to attempt to prove guilt on a misstatement thereof. See Jackson v. Virginia, 99 S.Ct. 2781 (1979); McDuff v. State, 939 S.W.2d 607 (Tex. Crim. App. 1997). Thompson v. State, 95 S.W. 3d 357 (Tex. Crim. App. — Houston [1st Dist.] 2002) Held: Voir dire questions or hypotheticals that misstate the law are improper. The State's repitious use of the term "could" and "reasonably could" are diametrical to the jury charge, and serves to lessen the State's burden of proving that Applicant "should have anticipated [murder] as a result of carrying out the conspiracy" as Law 7.02(b) required. Applicant asserts in his Writ that the terms "could" and "reasonably could" leaves a broad range of possibilities to determine from during deliberation, when, in fact, the Law 7.02(b) narrows the door to a mandatory

16

FINDING OF "SHOULD HAVE BEEN ANTICIPATED" FOR THE JURY TO BASE THEIR FINDINGS ON. SEE Ex Parte Drinkert, 821 S.W. 2d 753 (Tex. Crim. App. 1991) (THE DEFENDANT WAS ENTITLED TO A NEW TRIAL WHERE ... THE PROSECUTOR ASKED THE JURY TO CONSIDER THE VICTIM'S STATE OF MIND, RATHER THAN THE DEFENDANT'S WHEN EVALUATING SELF-DEFENSE. THIS MISSTATEMENT OF THE LAW WAS CONTRARY TO THE JURY CHARGE). ALSO, APPLICANT ASSERTS IN HIS WRIT THAT, "LAW [7.02(b)] IS A SUBSTANTIAL AND ESSENTIAL PART OF JURY CHARGE, THE FOUNDATION FOR JURORS TO BASE THEIR VERDICT OFF OF, AND TO MISSTATE OR TO ALTER THE LANGUAGE THEREOF IS TO ALTER THE JUROR'S PERCEPTION AND DISCERNMENT OF HOW TO CORRELATE THE LAW TO THE EVIDENCE OF THE CASE TO APPROPRIATELY ADJUDICATE VERDICT." (SEE GROUND ONE OF WRIT). SEE ALSO Morrow v. State, 753 S.W. 2d 372 (Tex. Crim. App. 1998) (HYPOTHET-ICAL QUESTION TO THE JURY INTENDED TO DEMONSTRATE THE DIFFERENCE BET-WEEN A MURDER THAT WAS COMMITTED "INTENTIONALLY" VERSUS "DELIBER-ATELY" WAS MISLEADING AND EFFECTIVELY PRECLUDED APPELLATE FROM MOUN-TING A CHALLENGE FOR CAUSE ON THAT BASIS); ALSO Lane v. State, 743 S.W. 2d 617 (Tex. Crim. App. 1987) (USE OF HYPOTHETICAL DURING VOIR DIRE BY PROSECUT-OR, WHICH INDICATED THAT CAPITAL MURDER COULD BE FOUND WHERE A ROBBER SHOOTS INTO CEILING AND THE BULLET RICOCHETS KILLING SOMEONE, WAS IMPROP-ER AND REQUIRED REVERSAL.) THUS, DESPITE THE JURY BEING PROPERLY INST-RUCTED REGARDING LAW 7.02(b), AS THE STATE SUBMITTED IN ITS CONCLUSIO-NS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN (Pg. 11:5), HARM IS STILL PREVALENT WHERE MISSTATEMENTS OF SAID LAW PERMEATED ENTIRE PRO-CEEDINGS. (SEE GROUND ONE OF WRIT). CF. Canales v. State, 98 S.W. 3d 670 (Tex. Crim. App. 2003) (NOTE THAT IMMEDIATELY FOLLOWING THE OBJECTIONAB-LE COMMENTS, THE PROSECUTOR CORRECTED ANY MISSTATEMENTS OF THE LAW IT MAY HAVE MADE. CONSIDERING THE ENTIRETY OF VOIR DIRE, ANY ERROR IN THE PROSECUTOR'S INITIAL COMMENTS WERE HARMLESS). THE EVIDE-

17

NCE AGAINST APPLICANT INCLUDES: (1) STORE'S SURVEILLANCE VIDEO; (2) TESTIMONIES FROM DETECTIVE DISHKO AND CO-DEFENDANT, QUINONES; AND, (3) A VIDEOTAPED CONFESSION BY APPLICANT. NOTHING INTRODUCED INTO THE EVIDENCE, OTHER THAN A "SCENARIO" GIVEN BY APPLICANT, EXPLOITED BY STATE, THAT THE STATE SUBMITTED TO THE JURY, SUGGESTED THAT APPLICANT "SHOULD HAVE ANTICIPATED [MURDER] AS A RESULT OF CARRYING OUT THE CONSPIRACY. (SEE GROUND FOUR OF WRIT). HOWEVER, THERE IS EVIDENCE INTRODUCED THAT APPLICANT "COULD/REASONABLY COULD" HAVE ANTICIPATED MURDER AS A RESULT OF CARRYING OUT THE CONSPIRACY, E.G., (1) APPLICANT KNEW GUN WAS LOADED (RR.6:210); (2) APPLICANT KNEW OF PLAN TO HOLD STORE CLERK HOSTAGE (RR.6:203); AND (3) QUINONES TESTIFIED THAT, GOING TO ROB A STORE WITH A LOADED GUN, ITS POSSIBLE SOMEBODY COULD GET HURT AND/OR POSSIBLY INTENTIONALLY KILLED. (RR.7:26-27). THUS, APPLICANT HEREIN CONCEDES THAT PROOF WAS SHOWN "BY A PREPONDERANCE OF THE EVIDENCE THAT THE ERROR CONTRIBUTED TO CONVICTION." EX PARTE WILLIAMS, 65 S.W. 3d 656, 658 (TEX. CRIM. APP. 2001) (SEE PG. 11:3). THUS, APPLICANT RESPECTFULLY DIFFERS WITH THE STATE'S RECOMMENDATION IN ITS CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, THAT "APPLICANT'S FIRST GROUND FOR RELIEF BE DENIED." (SEE PG. 11:7). NEXT, THE STATE, IN IT'S CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, SUGGESTED THAT: "THE STATE'S CLOSING ARGUMENT FELL WITHIN THE PERMISSIBLE AREAS OF ARGUMENT," AND THAT: "APPLICANT HAS FAILED TO PROVE THAT THE STATE COMMITTED PROSECUTORIAL MISCONDUCT." (PG. 12:8-10). APPLICANT HEREIN CONCEDES THAT ABOVE IN HIS OBJECTION TO THE STATE'S FINDINGS OF FACT, WHICH THE COURT ADOPTED AS ITS OWN, A SUFFICIENT SHOWING ESTABLISHES THAT THE STATE'S CLOSING ARGUMENT DID NOT FALL WITHIN THE PERMISSIBLE AREAS OF ARGUMENT, THUS, PROVING THAT THE STATE DID, IN FACT, COMMIT PROSECUTORIAL MISCONDUCT. (SEE GROUNDS ONE, TWO, AND THREE OF WRIT). THUS, APPLICANT RESPECTFULLY DIFFERS WITH THE

18

State recommendation in its Conclusions of Law, which the Court adopted as its own, that Applicant's second Ground "and "third Ground for relief be Denied. "(Pg. 12:11-12).


No Evidence (Ground Four)

Applicant alleged in his Writ that there is no evidence to legally support conviction of capital murder under Law 7.02(b). In the State's Conclusions of Law, which the Court adopted as its own, the State submitted: "Quinones' testimony, Applicant's confession, and the surveillance video was more than 'some' evidence that Applicant <u>committed the offense of capital murder.</u>"(Pg. 13:16)(emphasis added). Applicant contends, first and foremost, that he is not the perpetrator to the capital murder, merely charged as a party to the offense, thus, the evidence submitted by the State does not, nor cannot, show "some" evidence "that Applicant committed the offense of capital murder."(Pg. 13:16). Furthermore, the evidence herein submitted by the State, and adopted by the Court as its own, suggests only that Applicant <u>agreed</u> to, and, participated in a conspiracy of aggravated robbery, as Applicant affirmatively established above in Objection to Findings of Fact. That is, Applicant's confession, Quinones' testimony, and/nor the surveillance video established, beyond a reasonable doubt, that: (1) the murder was committed "in an attempt to carry out a conspiracy to commit "aggravated robbery;" (2) that the murder "was committed in furtherance of the "aggravated robbery; and/nor (3) that the murder was one that Applicant "should have anticipated as a result of the carrying out of the "aggravated robbery, as Texas Penal Code, § 7.02(b) required, in order to legally support conviction of capital murder under criminal responsibility for conduct of another, and satisfy Due Process of Law as guaranteed by the Fourteenth Amendment of the U.S. Constitution. (See Grou-

19

No Four of Writ). Thus, Applicant concedes that he has NOT "failed to prove that there was 'no' evidence to support his conviction," as required by law, and respectfully differs with the State's recommendation in its Conclusions of Law, which the Court adopted as its own, that "Applicant's Fourth Ground for relief be DENIED." (Pg. 13:17-18).


Judicial Misconduct (Ground Five)

"Unless (1) the record on direct appeal cannot be expected to be sufficient to resolve the claim (i.e. ineffective assistance of counsel) . . . claims raised and rejected on direct appeal cannot be raised in an application for writ of habeas corpus. See Ex Parte Nailor, 149 S.W. 3d 125, 131 (Tex. Crim. App. 2004); Ex Parte Drake, 883 S.W 2d 213, 215 (Tex. Crim. App. 1994)." (Pg. 13:19). Applicant herein agree with the State's Conclusions of Law, which the Court adopted as its own, that the issue concerning Trial Court's failure to adhere to a mandatory statute and appoint second counsel to defendant charged with capital murder sooner was raised and rejected on direct appeal. (Pg. 14:23). However, Applicant herein contends that the record was insufficient to resolve said claim on direct appeal. Id Ex Parte Nailor, at 131. Allow for an explanation: The Second Court of Appeals that because objection was not raised by Defense for the fourteen months second counsel was absent, the issue wasn't preserved for appellate review, under Rule 33.1 (a)(1). See Tex. R. App. P. 33.1 (a)(1). However, "in the interest of justice," the court addressed the complaint anyhow. (See Direct Appeal, Judgement, Pg. 25). The court concluded: "Although Perales was represented by only one attorney for fourteen months after his indictment — during which time State did not waive death penalty, Perales cannot show that error affected his substantial right," relying on Rule 44.2(b) as reference. See Tex. R. App. P., 44.2(b).

20

Following, the court held: "As we have explained in detail above, Perales does not establish any specific instances of misconduct or ineffective assistance of counsel committed by his attorney," relying on <u>Wright v. State</u>, 28 S.W. 3d 526, 530 (Tex.Crim. App. 2000).(See D. App., Jdgmnt., pg. 25). Based on those findings, the point of error was overruled. See D. App., Jdgment, pg. 26. Now, first and foremost, the Error that the trial court failed to adhere to ~~was~~ a mandatory statute, it was evident on the face of the record, and the court reveiwed claim under harmless error analysis: Rule 44.2(b). The Second Court of Appeals deduced that: "Perales cannot show that the error affected his substantial rights," which is contrary to the requirements of Rule 44.2(b). Rule 44.2(b) provides: "If appellate record in a criminal case reveals error in the proceedings below, the appellate court <u>shall</u> reverse the judgement under review, <u>unless the appellate court</u> determines beyond a reasonable doubt, that error made no contribution to the conviction or the punishment." See Tex. R. App. P., Rule 44.2(b) (emphasis added). Rule 44.2(b) clearly requires the court to make a finding that error was harmless, beyond a reasonable doubt, rather than the defendant to establish that error was harmful, as the Second Court of Appeals suggested. See <u>Saterwhite v. Texas</u>, 108 S.Ct. 1792, 1794 (1988)(The harmless error rule setforth in <u>Chapman v. California</u>, 87 S.Ct. 824 (1967) — which held that if the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand ... [U]nder the <u>Chapman</u> harmless error test, the controlling question is whether <u>the State has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained</u>.) The Court in <u>Wright</u> even, in the interest of justice, conducted a reading of the record to search for "any obvious inadequacies in represen-

21

TATION. "SEE WRIGHT ID. AT 531 (FURTHER, OUR OWN READING OF THE RECORD HAS NOT SHOWN ANY OBVIOUS INADEQUACIES IN REPRESENTATION). APPLICANT HEREIN ASSERTS THAT HAD THE SECOND COURT OF APPEALS CONDUCTED SUCH A "READING OF RECORD," THE INADEQUACIES ★ OF MR. FORD WOULD HAVE BEEN APPARENT, AS APPLICANT HAS AFFIRMATIVELY ESTABLISHED IN HIS WRIT. (SEE GROUNDS FIVE AND SIX OF WRIT). FURTHERMORE, WELL, FIRST AND FOREMOST, APPLICANT WOULD LIKE TO HEREIN MAKE NOTE THAT APPELLATE COUNSEL, DON HASE, DID RAISED INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL ON APPLICANT'S TRIAL COUNSEL, BUT ONLY BECAUSE THE RECORD INDICATED ON ITS FACE THAT TRIAL COUNSEL RAISED IT ON HIMSELF. (RR.6:99-100). THE COURT CONCLUDED, IN REGARDS TO THAT CLAIM, THAT "SINGLE ERROR DID NOT CONSTITUTE INEFFECTIVE ASSISTANCE OF COUNSEL." NONETHELESS, REGARDING THE CLAIM ABOUT TRIAL COURT'S FAILURE TO ADHERE TO A MANDATORY STATUTE, THE COURT CONCLUDED: "PERALES DOES NOT ESTABLISH ANY SPECIFIC INSTANCES OF MISCONDUCT OR INEFFECTIVE ASSISTANCE OF COUNSEL COMMITTED BY HIS ATTORNEY," BUT APPLICANT HEREIN CONTENDS THAT, THE RECORD, ON DIRECT APPEAL, IS INSUFFICIENT FOR APPLICANT TO ACCURATELY ESTABLISH SAID CLAIM, OR FOR THAT MATTER, FOR THE COURT TO ACCURATELY MAKE THE ASSESSMENT THAT THE CLAIM WAS NOT ESTABLISHED. THE TEXAS COURT OF CRIMINAL APPEALS HAS LONG HELD THAT THE RECORD ON DIRECT APPEAL IS UNDEVELOPED TO ACCURATELY ADJUDICATE AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM. SEE JACKSON V. STATE, 973 S.W. 2d 954, 957 (TEX. CRIM. APP. 1998)(A SUBSTANTIAL RISK OF FAILING ACCOMPANIES AN APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL. RARELY WILL A REVIEWING COURT BE PROVIDED THE OPPORTUNITY TO MAKE ITS DETERMINATIONS ON DIRECT APPEAL WITH A RECORD CAPABLE OF PROVIDING A FAIR EVALUATION OF THE MERITS OF THE CLAIM INVOLVING SUCH A SERIOUS ALLEGATION. IN THE MAJORITY OF INSTANCES, THE RECORD ON DIRECT APPEAL IS SIMPLY UNDEVELOPED AND CANNOT ADEQUATELY REFLECT THE FAILINGS OF COUNSEL); RYLAND-

22

ER V. STATE, 101 S.W. 3d 107, 110 (TEX. CRIM. APP. 2003)([T]HE RECORD ON DIRECT APPEAL WILL GENERALLY NOT BE SUFFICIENT TO SHOW THAT COUNSEL'S REPRESENTATION WAS SO DEFICIENT AS TO MEET THE FIRST PART OF STRICKLAND STANDARD AS TO THE REASONABLENESS OF COUNSEL'S CHOICES OFTEN INVOLVES FACTS THAT DO NOT APPEAR IN APPELLATE RECORD); ALSO BONE V. STATE, 77 S.W. 3d 826, 833 (TEX. CRIM. APP. 2002)(THE APPELLATE REVIEW OF DEFENSE COUNSEL'S REPRESENTATION IS HIGHLY DEFERENTIAL AND PRESUMES THAT COUNSEL'S ACTION FELL WITHIN THE WIDE RANGE OF REASONABLE AND PROFESSIONAL ASSISTANCE . . . AS THE COURT RECENTLY EXPLAINED, RARELY WILL THE TRIAL RECORD CONTAIN SUFFICIENT INFORMATION TO TO PERMIT A REVIEWING COURT TO FAIRLY EVALUATE THE MERITS OF SUCH A SERIOUS ALLEGATION: " IN THE MAJORITY OF CASES, THE RECORD ON DIRECT APPEAL IS SIMPLY UNDEVELOPED AND CANNOT ADEQUATELY REFLECT THE FAILINGS OF TRIAL COUNSEL ") (CITATIONS OMITTED)(EMPHASIS ADDED). THERE ARE AMPLE INSTANCES IN WHICH APPLICANT'S COUNSEL, AT TRIAL, FAILED TO OBJECT (E.G., SEE GROUND SIX OF WRIT), HOWEVER, RAISING SAID COMPLAINT ON THE DIRECT APPEAL WOULD'VE PROVED TO BE FUTILE. (SEE THOMPSON V. STATE, 9 S.W. 3d 808, 813 (TEX. CRIM. APP. 1999)(IN THE GREAT MAJORITY OF CASE, THE RECORD ON DIRECT APPEAL WILL NOT CONTAIN AN EXPLICIT STATEMENT ON THE PART OF TRIAL COUNSEL EXPLAINING THE REASONS WHY HE FAILED TO OBJECT. THEREFORE, BY REQUIRING THE RECORD TO CONTAIN INFORMATION, THE COURT'S OPINION EFFECTIVELY SHORT-CIRCUITS VIRTUALLY ANY ATTEMPT TO RAISE THIS TYPE OF CLAIM ON DIRECT APPEAL)). ALTHOUGH THE COMPLAINT AT HAND IS NOT ONE OF INEFFECTIVE ASSISTANCE OF COUNSEL, BUT RATHER IS REGARDING THE TRIAL COURT'S FAILURE TO ADHERE TO A MANDATORY STATUTE AND TIMELY APPOINT SECOND COUNSEL TO CAPITAL MURDER DEFENDANT, APPLICANT CONCEDES THAT THE SECOND COURT OF APPEALS STILL, IN RESPONSE TO THE "FAILURE TO ADHERE TO, AND COMPLY WITH A MINISTRIAL DUTY AND TIMELY APPOINT SECOND COUNSEL" CLAIM ON DIRECT APPEAL, ASSESSED AN ADJUDICATION BASED PRECISELY ON THAT ———— INEFFECTIVE ASSISTANCE OF COUNSEL, HOLDING

23

THAT: "PERALES DOES NOT ESTABLISH ANY SPECIFIC INSTANCES OF MISCONDUCT OR INEFFECTIVE ASSISTANCE OF COUNSEL COMMITTED BY HIS ATTORNEY, "THUS, IN ESSENCE, SUGGESTING A REQUIREMENT THAT SUCH A CLAIM BE RAISE, AND ESTABLISHED ON DIRECT APPEAL FROM SUCH AN INSUFFICIENT RECORD TO EVEN, ACCORDING TO COURT OF CRIMINAL APPEALS IN BONE, "PERMIT A REVIEWING COURT TO FAIRLY EVALUATE THE MERITS OF SUCH A SERIOUS ALLEGATION, "IN ORDER TO BE ENTITLED TO RELIEF. (SEE D. APP. JDGMNT., PG 25). APPLICANT HEREIN CONCEDES THAT THIS ADJUDICATION IS A MISAPPLIED STANDARD OF LAW, AND THAT THE JUDGEMENT BASED THEREON IS INACCURATE, NULL, AND VOID, FOR TWO REASONS: (1) THE DEFENDANT, ON DIRECT APPEAL, DOES NOT CARRY THE BURDEN OF ESTABLISHING, BEYOND A REASONABLE DOUBT, THAT HE WAS HARMED BY OBVIOUS AND AGREED UPON ERROR, RATHER, THE STATE IS THE ONE THAT CARRIES THE BURDEN OF ESTABLISHING, BEYOND A REASONABLE DOUBT, THAT THE REVEALED ERROR "MADE NO CONTRIBUTION TO THE CONVICTION, ACCORDING TO RULE 44.2(b) (ID. SATTERWHITE, 108 S.CT. AT 1794); AND, (2) ASSUMING ARGUENDO THAT THE REQUIREMENT OF ESTABLISHING HARM IS A BURDEN THAT THE DEFENDANT BEARS, FOR THE SECOND COURT OF APPEALS TO ASSESS A CLAIM THAT DENIES A DEFENDANT RELIEF FOR HIS FAILING TO ESTABLISH THE "INEFFECTIVE ASSISTANCE OF COUNSEL "COMPONENT WITHIN THAT CLAIM, BASICALLY ONLY BECAUSE THE RECORD ON DIRECT APPEAL IS SO INSUFFICIENT TO ACCURATELY ADJUDICATE THE "INEFFECTIVE ASSISTANCE OF COUNSEL "COMPONENT WITH THE CLAIM THAT COURTS RARELY HEAR SUCH CLAIMS ON DIRECT APPEAL, IS ABSURD, AND IMPROPER. THUS, APPLICANT HEREIN ASSERTS THAT THE RECORD ON DIRECT APPEAL, WHERE THE INEFFECTIVE ASSISTANCE OF COUNSEL CONSTITUENT OF THE CLAIM IS CONCERNED, WAS NOT "SUFFICIENT TO DETERMINE WHETHER THE TRIAL COURT ERRED IN NOT APPOINTING SECOND COUNSEL SOONER "(PG. 14:20); NAILOR, ID. AT 131; AND, THAT CLAIM SHOULD BE COGNIZABLE ON THIS WRIT OF HABEAS CORPUS, DESPITE BEING RAISED AND REJECTED ON DIRECT APPEAL, WHERE IT CAN BE PROPERLY ADJUDICATED. SEE EX PARTE

24

Tovar, 901 S.W. 2d 484 (Tex. Crim. App. 1995) (Failure to adhere to legislative directive or mode of proceeding designed to safeguard a constitutional right will be cognizable by Writ of Habeas Corpus only when omission resulted in denial of constitutional protection). Applicant, for all reasons stated above, respectfully differs with the State's recommendation in its Conclusions of Law, which the Court adopted as its own, that "Applicant's Fifth Ground for relief be DENIED." (Pg. 14:24).

*Ineffective Assistance of Counsel* (Grounds Six and Seven)
Applicant herein concedes that the State's Conclusions of Law, which the Court adopted as its own, that: "Counsel properly investigated and prepared for trial," is only regarding Hon. Tim Moore, NOT secondary counsel, Hon. Robert Ford, for Mr. Ford was not yet appointed to case to be afforded his right to. (Pg. 15:29) (See also Grond Five of Writ). Next, the State submitted in its Conclusions of Law, which the Court adopted as its own, that: "Applicant has failed to prove that counsel's decision not to repeatedly object to a HARMLESS WORD USAGE constituted deficient representation." (Pg. 15:31) (emphasis added). First and foremost, Applicant contends that misstating the law that the jury is instructed to return their verdict based on, repititiously throughout the entire proceedings, is not a "harmless usage" thereof, perhaps if just haply, however, to perpetually misrepresent, with total abandon, in spite of given objections, the very law that the jury is to return a verdict based on, is indeed harmful. When trial counsel, after several misstated usages of "could" and "reasonably" by State, does elect to offer his first objection, he also acknowledged the prejudice in said usage, stating: "Objection. And this is important Judge. It should have been anticipated. This is not a could question. This is a mandatory

25

SHOULD: "THE TRIAL COURT, RECOGNIZING THE PREJUDICE ALSO, SUSTAINED THE OB-JECTION, AND INSTRUCTED THE STATE TO "RECLARIFY. "(SEE RR.4:110-111). TRIAL COUNSEL WAS ABSOLUTELY CORRECT TO OBJECT, ASSERTING THE IMPORTANCE OF THE LANGUAGE IN LAW 7.02(b). AND APPLICANT HEREIN CONTENDS THAT A FAILURE TO REPEATEDLY OBJECT TO MISSTATING AN ESSENTIAL REQUISITE OF THE LAW TO APPROPRIATELY ADJUDICATE THE VERDICT IN SAID CAUSE DOES CONSTITUTE "DEFICIENT REPRESENTATION," WHEREAS, A CONVICTION FOUNDED UPON A MISSTATED USAGE OF THE WORD(S) "COULD" AND/OR "REASONABLY," RATHER THAN THE MANDATED "SHOULD" RESULTS OR AMOUNTS TO A VIOLATION OF DUE COURSE OF LAW. SEE MORROW V. STATE, 753 S.W. 2d 372 (TEX. CRIM. APP. 1988)(VIOLATION OF HIS DUE COURSE OF LAW AND REPRESENTATION OF COUNSEL UNDER TEXAS CONSTITUTION, ARTICLES §§ 19 AND 10. HYPOTHETICAL QUESTION TO THE JURY INTENDED TO DEMONSTRATE THE DIFFERENCE BETWEEN MURDER THAT WAS COMMITTED INTENTIONALLY AND VERSUS DELIBERATELY WAS MISLEADING AND EFFECTIVELY PRECLUDED APPELLATE FROM MOUNTING CHALLENGE FOR CAUSE ON THAT BASIS.); SEE ALSO LANE V. STATE, 743 S.W. 2d 617 (TEX. CRIM. APP. 1987)(USE OF HYPOTHETICAL DURING VOIR DIRE BY PROSECUTOR, WHICH INDICATED THAT CAPITAL MURDER COULD BE FOUND WHERE ROBBER SHOOTS INTO CEILING AND BULLET RICOCHETS KILLING SOMEONE, WAS IMPROPER AND REQUIRED REVERSAL.). THAT IS, THE FAILURE TO REPEATEDLY OBJECT TO EVERY INSTANCE OF MISSTATING A MANDATED REQUISITE OF LAW SHOWS THAT "COUNSEL'S REPRESENTATION FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS," DESPITE WHAT THE STATE WOULD SUGGEST IN ITS CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN. SEE STRICKLAND V. WASHINGTON, 104 S.CT. 2052(1984). NEXT, APPLICANT CONTENDS THAT "DEFICIENT REPRESENTATION" WAS CLEARLY ESTABLISHED, REGARDING TRIAL COUNSEL'S PERFORMANCE DURING THE TRIAL PROCEEDINGS, CONTRARY TO THE STATE'S CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN. (PG.15:32). AGAIN, FAILURE TO OBJECT TO THE COMMITTED MISSTATEMENT OF LAW 7.02(b), BY THE STATE (RR.6:140), AS ESTA-

26

BLISHED ABOVE, SHOWS "COUNSEL'S REPRESENTATION FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS." ALSO, FAILURE TO OBJECT TO THE STATE'S CHARACTERIZING THE OFFENSE AS A CAPITAL MURDER, CONSTITUTED "DEFICIENT REPRESENTATION," CONTRARY TO THE STATE'S CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN. (SEE PG. 15:32); ALSO (RR. 6:92). COUNSEL ACKNOWLEDGED HIS OWN DEFICIENCY BY RAISING INEFFECTIVE ASSISTANCE OF COUNSEL ON HIMSELF. (SEE RR. 6:99). THE TRIAL COURT SUSTAINED COUNSEL'S GIVEN OBJECTION, THUS, FURTHER AFFIRMING THAT "COUNSEL'S REPRESENTATION FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS" FOR HIS FAILURE TO OBJECT IN THE FIRST INSTANCE OF MISCONDUCT BY THE STATE. NEXT, APPLICANT CONTENDS WITH THE STATE'S SUBMISSION IN ITS CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, THAT: "THE STATE'S CLOSING ARGUMENT FELL WITHIN THE PERMISSIBLE AREAS OF ARGUMENT." (PG. 15:34). APPLICANT, ABOVE IN OBJECTION TO THE FINDINGS OF FACT, AFFIRMATIVELY ESTABLISHED THAT THE STATE'S ARGUMENT DID NOT FALL WITHIN THE PERMISSIBLE AREAS OF ARGUMENT. THUS, COUNSEL'S DECISION TO NOT REPEATEDLY OBJECT TO THE STATE'S CLOSING ARGUMENT THAT EVIDENTLY FELL OUTSIDE OF THE PERMISSIBLE AREAS OF ARGUMENT IS NOT THE RESULT OF A REASONABLE TRIAL STATEGY, AS THE STATE SUGGESTED IN ITS CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN. (PG. 15:35). IN FACT, COUNSEL'S DECISION NOT TO REPEATEDLY OBJECT TO PROSECUTOR'S IMPROPER ARGUMENTS DURING CLOSING ARGUMENT CONSTITUTED "NO REASONABLE TRIAL STRATEGY," AS APPLICANT AFFIRMATIVELY ESTABLISHED IN HIS WRIT. (SEE GROUND SIX OF WRIT). THUS, APPLICANT HEREIN ASSERTS THAT HE HAS SUCCESSFULLY PROVED "THAT HIS ATTORNEY'S REPRESENTATION FELL BELOW OBJECTIVE STANDARD OF REASONABLENESS," (PG. 15:36) WHEN THE "TOTALITY OF COUNSEL'S REPRESENTATION IS VIEWED." SEE CANNON V. STATE, 668 S.W. 2d 401 (TEX. CRIM. APP. 1984). NEXT, APPLICANT HEREIN SUGGESTS THAT DETECTIVE DISHKO'S AND QUINONES' TESTIMONIES, COUPLED WITH APPLICANT'S CONFESSION, THAT, ALTOGETHER, CORRE-

LATES WITH THE DEPICTIONS IN THE SURVEILLANCE VIDEO, AS ARGUED BY APPLICANT IN GROUND FOUR: NO EVIDENCE, SUFFICIENTLY SHOWS THAT "THERE IS <u>REASONABLE PROBABILITY</u> THAT, BUT FOR THE ALLEGED ACTS OF MISCONDUCT, THE RESULTS OF THE PROCEEDINGS WOULD BE DIFFERENT." (PG. 16:39-42). THUS, APPLICANT HAS ACCURATELY AND ADEQUATELY PROVED THAT "HE RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL." (PG. 16:43). APPLICANT, FOR THE REASONS HEREIN MENTIONED ABOVE, RESPECTFULLY DIFFERS WITH THE STATE'S RECOMMENDATION IN ITS CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, THAT "APPLICANT'S SIXTH" AND "SEVENTH GROUNDS FOR RELIEF BE DENIED." (PG. 16:44-45).

### Inadmissible Evidence (Ground Eight)

APPLICANT AGREES WITH THE STATE'S CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, THAT "APPLICANT'S CONFESSION CLAIM WAS RAISED AND REJECTED ON DIRECT APPEAL." (PG. 17:48), HOWEVER, ALSO HEREIN ASSERTS THAT THE SECOND COURT OF APPEALS' PRIOR JUDGEMENT WAS RENDERED VOID. SEE <u>Ex Parte Nailor</u>, 149 S.W. 3d 125, 131 (TEX. CRIM. APP. 2004); <u>Ex Parte Drake</u>, 883 S.W. 2d 213, 215 (TEX. CRIM. APP. 1994). IN REGARDS TO THIS CLAIM ON DIRECT APPEAL, THE SECOND COURT OF APPEALS HELD: "PERALES ARGUES THAT THE DETECTIVE'S STATEMENT THAT IT WOULD BENEFIT PERALES TO SPEAK TO HIM WAS LIKE A PROMISE FOR A BENEFIT UPON HIS CONFESSION. PERALES SEEMS TO ARGUE THAT BECAUSE SHORTLY AFTER MAKING THIS STATEMENT, THE DETECTIVE SAID THAT PERALES COULD RECEIVE THE DEATH PENALTY IF HE CONFESSED. THIS VERY ATTENUATED REASONING, REQUIRING US TO PIECE TOGETHER DIFFERENT PARTS OF WHAT THE DETECTIVE SAID AT DIFFERENT TIMES DURING THE INTERROGATION, IS A FAR CRY FROM THE AFFIRMATIVE PROMISE FOR A BENEFIT DISALLOWED BY CASE LAW," RELYING ON <u>Creager v. State</u>, 952 S.W. 2d 852, 856 (TEX. CRIM. APP. 1997). ACCORDINGLY, THE STATEMENT WAS DEEMED VOLUNTARY, BY A PREPONDERANCE OF THE EVIDENCE, THUS, CLAIM WAS OVERRULED. (SEE D. APP., JDGMNT., PG 12-13). THE COURT IN <u>Creager</u> HELD: ARTICLE 38.-

21 of the Texas Code of Criminal Procedure requires that the statement have been "freely and voluntarily made without compulsion or persuasion." Even without the statute, the courts of this state have held that statements must not have been "obtained by the influence of hope or fear, applied by a third person to the prisoner's mind." Also <u>Cain v. State</u>, 18 Tex. 387, 390 (Tex. 1857). So as not to misinterpret, take things out of context, or, as the State suggested in its Judgement, have to "piece together different ~~pieces~~ parts of what the detective said at different times," the following, in part, between the detective and Applicant during the interrogation, ensues:

[Dishko]: You don't have to talk to me if you don't want to ... Okay? This very real. You're under arrest for murder for a reason. Okay? It would benefit you to talk to me about your involvement because I know that Jared was the one that pulled that trigger. Okay? If you — if you wanna not do that, that's up to you too. I'm letting you know as a young man though, <u>there's some benefits to talking</u>. And <u>there's some benefits explaining your side of the story</u>. If you went there to to do a robbery and -- and somebody else did something else, (cough) that's what you need to say. That's going to be up to you though ... But I'm not going to tell you everything I know. Because you're going to have to tell me what your involvement was. Okay? If -- if I put it in -- in my words, you're not going to like how I put it ... Okay? Do you wanna talk to me?

[Perales]: We talking.

[Dishko]: Well, no I'm talking. You're listening right now. You want to tell me what happened that night?

[Perales]: Well (unintelligible) yall know. I guess whatever, sh**. I don't know sh**.

[Dishko]: Okay. Then you really don't want to talk to me? Do you understand that capital murder carries the death penalty?

[Perales]: (shaking head up and down) What can I say in my situation?

[Dishko]: What can you say? A lot.

[Perales]: You just said you know who the shooter. You know everything so what can I say?

[DISHKO]: WELL — WELL YOU CAN EXPLAIN 'CAUSE - - 'CAUSE RIGHT NOW IT LOOKS LIKE YOU WENT THERE TO DO A MURDER TOO. YOU KNEW YOU - - IN MY MIND —— YOU WENT THERE TO KILL MAN.

[PERALES]: NAH.

[DISHKO]: OKAY. WELL THEN, YOU NEED TO EXPLAIN THAT. DON'T YOU THINK THAT - - THAT — IF THAT WAS NOT YOUR INTENTION TO KILL SOMEONE, DON'T YOU THINK THAT - - THAT WAS IMPORTANT? . . . OKAY, AND NO ONE ELSE CAN SPEAK FOR YOU.

[PERALES]: OKAY.

[DISHKO]: I CAN'T SPEAK FOR YOU. I CAN SHOW THE JURY THE EVIDENCE I HAVE . . . BUT I CAN'T SHOW THE JURY WHAT YOU SAID HAPPENED. 'CAUSE I DON'T KNOW IN YOUR MIND WHAT HAPPENED. I DON'T KNOW IN YOUR MIND WHAT YOU PLANNED TO DO. YOU CAN ONLY EXPLAIN THAT. IF YOU WEREN'T THERE TO HURT SOMEBODY, YOU NEED TO EXPLAIN THAT . . . I MEAN A MAN DIED. YOU KNOW, IF WERE THERE TO TAKE - - TAKE SOMETHING —— AND I'M NOT GOING TO PUT WORDS IN YOUR MOUTH —— YOU NEED TO EXPLAIN THOSE THINGS TO ME. AND THE REASON WHY YOU NEED TO EXPLAIN THOSE THINGS TO ME IS BECAUSE YOUR INVOLVEMENT IS DIFFERENT THAN THE PERSON THAT SHOT PERSON.

(DEF.'S EX. 3, PG. 3-5) (EMPHASIS ADDED).

TO SUMMARIZE; DETECTIVE DISHKO IS CLEARLY CONVINCINGLY CONVEYING THAT A STATEMENT CAN BE USED "FOR" APPLICANT, WHICH, AS EXPLAINED IN CREAGER, "WOULD BE HOLDING OUT AN INDUCEMENT." ID. CREAGER 952 S.W. 2d AT 855. UPON APPLICANT ASSERTING, "I DON'T KNOW SH**," THE DETECTIVE REPLIED; "THEN YOU REALLY DON'T WANT TO TALK TO ME?," THEN MENTIONED THE DEATH PENALTY TO APPLICANT. WHEN ASKED, BY TRIAL COUNSEL AT SUPPRESION HEARING, FOR THE REASON WHY HE MENTIONED THE DEATH PENALTY TO APPLICANT, DETECTIVE DISHKO AGREED TO "WANT[ING] TO PLANT SEED IN [APPLICANT'S] HEAD" THAT "IF HE DIDN'T COOPERATE HE MIGHT GET THE DEATH PENALTY," THOUGH HE KNEW "THAT WAS NOT THE TRUTH." (RR. 6:74-75). EVIDENTLY DET. DISHKO HAD HIT HIS MARK OF TRYING TO IMPLANT "FEAR" OF THE DEATH PENALTY IN APPLICANT'S HEAD, WHEREUPON APPLICANT, FROM NOT KNOWING NOTHING, THEN INQUIRED: "WHAT CAN I SAY IN MY SITUATION?" THEREAFTER, THE DETECTIVE CONTINUED TO EMPLOY THE "INFLUENCE OF HOPE," CONVEYING TO APPLICANT HOW A STATEMENT COULD BE USED "FOR" APPLICANT, SAYING: "AND THE

REASON WHY YOU NEED TO EXPLAIN THOSE THINGS TO ME, IS BECAUSE YOUR INVOLVEMENT IS DIFFERENT THAN THE PERSON THAT SHOT THAT PERSON." (DEF.'S EX. 3, PG. 5). THE GIST OF THIS MATTER IS, (1) THE DETECTIVE EMPLOYED THE "INFLUENCE OF FEAR," INTENTIONALLY BY HIS OWN ADMISSION, BY IMPLIEDLY TELLING APPLICANT THAT NON-COOPERATION COULD RESULT IN RECEIVING DEATH PENALTY, THOUGH KNOWING OF ILLEGITIMACY ALL ALONG, WHEREAS, APPLICANT BEING 17 YEARS OLD, WAS ACTUALLY EXEMPT; AND, (2) THE DETECTIVE EMPLOYED THE "INFLUENCE OF HOPE," TELLING APPLICANT THAT IF APPLICANT DIDN'T GO TO THE STORE INTENDING TO HURT OR KILL ANYBODY THEN THAT IS WHAT APPLICANT SHOULD SAY BECAUSE THAT WOULD MEAN APPLICANT'S SITUATION IS DIFFERENT THAN THAT OF THE SHOOTER, I.E., THE DETECTIVE SUGGESTED THAT MAKING A STATEMENT WAS IN APPLICANT'S BEST INTEREST, THAT IT WOULD "BENEFIT" APPLICANT TO MAKE A STATEMENT BECAUSE IF APPLICANT DIDN'T INTEND TO HURT OR KILL ANYBODY HIS INVOLVEMENT WAS DIFFERENT THAN SHOOTER'S, BUT THAT APPLICANT HAD TO TELL THAT TO THE DETECTIVE, INSINUATING THAT IF APPLICANT DECIDED AGAINST MAKING A STATEMENT THEN APPLICANT WOULD STAND TO FACE THAT WHICH THE SHOOTER DID: THE MURDER CHARGE AND THE DEATH PENALTY. THE DETECTIVE USED THE "INFLUENCE OF HOPE AND FEAR" TO OBTAIN A STATEMENT FROM APPLICANT. COUPLED WITH THE TOTALITY OF CIRCUMSTANCES INVOLVED: (1) APPLICANT BEING 17 YEARS OLD; (2) HAVING ONLY A 9TH GRADE EDUCATION; AND, (3) HAVING LOW EXPERIENCE WITH THE SYSTEM, APPLICANT CONCEDES THAT THE STATEMENT THEREBY OBTAINED BY DET. DISHKO WAS INVOLUNTARY. UNDER FEDERAL DUE PROCESS PRINCIPLES, A STATEMENT IS INVOLUNTARY IF THE DEFENDANT WAS OFFERED INDUCEMENTS OF SUCH A NATURE OR COERCED TO SUCH A DEGREE THAT INDUCEMENTS OR COERCION — NOT HIS OWN FREE WILL — PRODUCED THE STATEMENT. COLORADO V. CONNELLY, 107 S.CT. 515, 521-22 (1986). APPLICANT HEREIN CONTENDS THAT THE SECOND COURT OF APPEALS' CONCLUSION THAT APPLICANT DIDN'T ESTABLISH ANY "AFFIRMATIVE PROMISE FOR A BENE

31

FIT DISALLOWED BY CASE LAW "TO RENDER CONFESSION INVOLUNTARY, WAS A MISAPPLIED STANDARD OF APPLICATION OF LAW TO FACTS. (SEE D. APP., JDGMNT., PG. 12). CONTRARY TO SECOND COURT OF APPEALS' CONCLUSION, CASE LAWS HOLD: "TO RENDER THE CONFESSION INVOLUNTARY, SUCH PROMISE MUST BE (1) POSITIVE, (2) MADE OR SANCTIONED BY A PERSON IN AUTHORITY, AND (3) OF SUCH AN INFLUENTIAL NATURE THAT IT WOULD CAUSE A DEFENDANT TO SPEAK UNTRUTHFULLY. SEE MARTINEZ V. STATE, 127 S.W. 3d 792, 794 (TEX. CRIM. APP. 2004). NOTHING OF THE ESTABLISHMENT OF AN "AFFIRMATIVE PROMISE FOR A BENEFIT" REQUIRED, AS THE STATE SUGGESTED IN JUDGEMENT. CASE LAWS ALSO HOLD THAT A CONFESSION IS NOT TO BE "OBTAINED BY ANY DIRECT OR IMPLIED PROMISES, HOWEVER SLIGHT, NOR BY THE EXTENSION OF ANY IMPROPER INFLUENCE." ROBERTS V. STATE, 545 S.W. 2d 157, 161 (TEX. CRIM. APP. 1977) (EMPHASIS ADDED). FURTHERMORE, APPLICANT CONTENDS THAT THE SECOND COURT OF APPEALS' CONCLUSION THAT "PERALES NEVER PRESENTED ANY EVIDENCE THAT DETECTIVE DISHKO PURPOSEFULLY MADE ANY FALSE STATEMENT IN AN EFFORT TO PRODUCE AN UNTRUTHFUL CONFESSION OR OTHERWISE OFFENDED DUE PROCESS," IS ALSO A MISAPPLIED STANDARD OF APPLICATION OF LAW TO FACTS. (SEE D. APP. JDGMNT., PG 12). THE CASE LAWS REQUIRE APPLICANT TO MAKE A SHOWING THAT IT IS "OF SUCH AN INFLUENTIAL NATURE THAT IT WOULD CAUSE A DEFENDANT TO SPEAK UNTRUTHFULLY." ID MARTINEZ 127 S.W. 3d AT 794. THE ACTUAL TRUTH OR FALSITY OF THE STATEMENT IS IRRELEVANT WHEN APPLYING THE LAW TO FACTS OF A CASE. ID. MARTINEZ 127 S.W. 3d AT 798. APPLICANT HEREIN CONCEDES THAT TO TELL ANY 17 YEAR OLD DEFENDANT —— WITH ONLY A 9TH GRADE EDUCATION AND LOW EXPERIENCE WITH THE LAW —— CHARGED WITH CAPITAL MURDER THAT CHARGE CARRIES THE DEATH PENALTY, FOR THE SPECIFIC PURPOSE "TO PLANT THE SEED" IN HIS HEAD THAT THATS POSSIBLE PUNISHMENT FOR NON-COOPERATION, KNOWING IT TO BE UNTRUE, AND IMPLYING THAT TO AVOID SUCH A HARSH RETRIBUTION, OR ANY OTHER POSSIBLE PUNISHMENT THAT

THE SHOOTER WAS SUBJECT TO FACING, ALL DEFENDANT HAD TO DO WAS TELL HIS SIDE OF THE STORY BECAUSE HIS INVOLVEMENT —— IF INTENTION WAS NOT ~~TO~~ FOR ANYBODY TO GET HURT OR KILLED —— ~~IS~~ WAS DIFFERENT FROM THAT OF THE SHOOTER, THOUGH ADMITTEDLY KNOWING THIS TO BE CONTRARY TO LAW, TOO, IS "OF SUCH AN INFLUENTIAL NATURE THAT IT WOULD CAUSE "ANY 17 YEAR OLD DEFENDANT —— WITH A 9TH GRADE EDUCATION AND LOW EXPERIENCE WITH LAW —— TO ADHERE TO THE SUGGESTIONS GIVEN BY PERSON IN AUTHORITY, REGARDLESS OF TRUTH OR FALSITY, AND IS ALSO "OFFENSIVE TO DUE PROCESS." SEE DOTSEY V. STATE, 630 S.W. 2d 343 (TEX. APP —— AUSTIN 1982). THUS, CONTRARY TO THE SECOND COURT OF APPEALS' MISAPPLIED STANDARD OF APPLICATION OF LAW TO FACTS SETFORTH IN THE JUDGEMENT ON DIRECT APPEAL, APPLICANT ASSERTS THAT HE DID FIRMLY ESTABLISH THAT "A PROMISE OF SOME BENEFIT TO THE DEFENDANT" —— IMPLIED OR OTHERWISE, HOWEVER SLIGHT —— WAS MADE BY DET. DISHKO; THAT SAID PROMISE WAS (1) POSITIVE, (2) MADE OR SANCTIONED BY A PERSON IN AUTHORITY, AND (3) OF SUCH AN INFLUENTIAL NATURE THAT IT WOULD CAUSE A DEFENDANT TO MAKE A STATEMENT, REGARDLESS OF TRUTH OR FALSITY (ID. MARTINEZ, 127 S.W. 3d AT 794); ALSO, THAT THE STATEMENT WAS INDUCED AND "OBTAINED BY THE IMPROPER INFLUENCE OF HOPE AND FEAR" COMMISSIONED BY DET. DISHKO, WHICH, UNDER FEDERAL DUE PROCESS PRINCIPLES, RENDERS STATEMENT INVOLUNTARILY OBTAINED. ID. CONNELLY, 107 S.CT. AT 521-22. THEREFORE, APPLICANT HEREIN RESPECTFULLY SUBMITS THAT THE SECOND COURT OF APPEALS' JUDGEMENT ON DIRECT APPEAL THAT *HELD*: "THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY CONCLUDING THAT THE STATE PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT PERALES'S STATEMENTS WERE VOLUNTARY," IS INVALID. (SEE D. APP., JDGMNT., PG.13). MOREOVER, THE TRIAL COURT'S METHOD FOR RULING ON APPLICANT'S STATEMENT HAS LONG BEEN "RENDERED VOID" BY PRIOR JUDGEMENTS FROM TEXAS COURTS. FOR EXAMPLE, IN GIPSON V. STATE, 819 S.W. 2d 890 (TEX. APP. —— DALLAS 1991), THE

COURT OF APPEALS RESOLVED A VOLUNTARINESS QUESTION BY MISUSING THE PER SE RULE THAT VIOLATION OF WARNING STATUTE MAKES THE STATEMENT INADMISSIBLE; ALSO IN Dunn v. State, 721 S.W. 2d 325 (Tex. Cr. App. 1986); AND Creager v. State, 952 S.W. 2d 852 (Tex. Crim. App. 1997). IN THE INSTANCE CASE AT HAND, THE TRIAL COURT FOUND THAT "THE WARNINGS THAT ARE REQUIRED UNDER 38.22, SECTION 2A WERE COMPLIED WITH AND THAT UNDER SUBSECTION 2B THE ACCUSED WAIVED THOSE RIGHTS AND PROCEEDED TO ANSWER THE OFFICER'S QUESTIONS" (RR. 6:83), TO DETERMINE VOLUNTARINESS OF APPLICANT'S STATEMENT AFTER THE STATUTORY WARNINGS GIVEN. THE COURT IN Creager HELD: "THIS CASE DOES NOT INVOLVE STATUTORY OR CONSTITUTIONAL WARNINGS BEFORE THE INTERROGATION. THE ISSUE IS THE SIGNIFICANCE OF THE INTERROGATOR'S REMARKS DURING THE INTERROGATION WHICH MIGHT HAVE LED APPELLANT TO BELIEVE THAT A CONFESSION WOULD HELP HIM. SUCH REMARKS MIGHT BE A CIRCUMSTANCE WHICH BEAR ON THE VOLUNTARINESS OF THE APPELLANT'S STATEMENT, BUT THE WOULD NOT NECESSARILY RENDER THE STATEMENT INADMISSIBLE. VOLUNTARINESS IS DECIDED BY CONSIDERING THE TOTALITY OF THE CIRCUMSTANCES UNDER WHICH THE STATEMENT WAS OBTAINED... THE TOTALITY OF CIRCUMSTANCES SHOULD BE CONSIDERED, AS WE HAVE SAID. ARTICLE 38.21 OF THE CODE OF CRIMINAL PROCEDURE REQUIRES THAT THE STATEMENT HAVE BEEN "FREELY AND VOLUNTARILY MADE WITHOUT COMPULSION OR PERSUASION." AND EVEN WITHOUT THE STATUTE, THE COURTS OF THIS STATE HAVE HELD THAT STATEMENTS MUST NOT BE HAVE BEEN "OBTAINED BY THE INFLUENCE OF HOPE OR FEAR, APPLIED BY A THIRD PERSON TO THE PRISONER'S MIND." Id. AT 855-56. LIKEWISE IN APPLICANT'S CASE, IT DID NOT INVOLVE A STATUTORY OR CONSTITUTIONAL WARNING BEFORE THE INTERROGATION, RATHER, THE ISSUE WAS THE SIGNIFICANCE OF DET. DISHKO'S REMARKS DURING THE INTERROGATION WHICH MIGHT HAVE LED APPLICANT TO BELIEVE THAT A CONFESSION WOULD BENEFIT HIM. THUS, TO MAKE A FINDING THAT APPLICANT RECEIVED STATUTORYLY REQUIRED WARNINGS, AND THAT UNDER SUBSECTION 2B APPLICANT WAIVED THOSE RIGHTS AND

34

PROCEEDED TO ANSWER THE OFFICER'S QUESTIONS, DOES NOT SATISFY ARTICLE 38.-21 THAT REQUIRES A STATEMENT TO BE "FREELY GIVEN AND VOLUNTARILY MADE WITHOUT COMPULSION OR PERSUASION." THEREFORE, FOR THE REASONS STATED ABOVE, I.E., (1) BECAUSE THE MISAPPLIED STANDARD OF APPLICATION OF LAW TO FACTS BY THE SECOND COURT OF APPEALS, HOLDING THAT TRIAL COURT DID NOT ABUSE ITS DISCRETION BECAUSE THE STATE PROVED THAT APPLICANT'S STATEMENT WAS VOLUNTARY, IS INVALID; AND (2) BECAUSE THE TRIAL COURT'S METHOD OF RULING ON APPLICANT'S STATEMENT, HOLDING THAT APPLICANT RECEIVED THE STATUTORILY REQUIRED WARNINGS AND WAIVED RIGHTS, SATISFYING ARTICLE 38.22 WHEN DETERMINING VOLUNTARINESS OF APPLICANT'S STATEMENT, RATHER THAN SATISFYING ARTICLE 38.21 THAT STATEMENT WAS FREELY AND VOLUNTARILY GIVEN WITHOUT COMPULSION OR PERSUASION, TRIAL COURT'S JUDGEMENT ON STATEMENT'S ADMISSIBILITY IS, WHERE PRIOR JUDGEMENT ON STATEMENT'S ADMISSIBILITY AND PRIOR JUDGEMENT ON CASELAWS RENDERED SAME, VOID. THUS, APPLICANT RESPECTFULLY DIFFERS WITH THE STATE'S RECOMMENDATION IN CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, THAT "APPLICANT'S EIGHTH GROUND FOR RELIEF BE DENIED." (PG. 17:51).

_INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (GROUND NINE)_

THE STATE SUBMITTED, IN ITS CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, THAT: "COUNSEL PROPERLY DID NOT ATTACK THE SUFFICIENCY OF THE EVIDENCE ON DIRECT APPEAL BECAUSE THE ERROR WAS NOT SUPPORTED BY THE RECORD." (PG. 19:62). APPLICANT HEREIN CONTENDS THAT, IN AFOREMENTIONED ARGUMENT ABOVE AND IN WRIT, THE INSUFFICIENCY OF THE EVIDENCE IS FIRMLY SUPPORTED AND ESTABLISHED IN RECORD. (SEE GROUND FOUR). APPELLATE ATTORNEY'S FAILURE TO RAISE INSUFFICIENT EVIDENCE ON DIRECT APPEAL, WHERE RECORD CLEARLY ESTABLISHED IT, IS PROOF THAT "ATTORNEY'S REPRESENTION FELL BELOW AN OBJECTIVE STANDARD OF REASONABLE." (PG. 19:63). APPLICANT ASSERTS THAT GROUND

FOUR OF WRIT, FIRMLY ESTABLISHES SUFFICIENT PROOF THAT "THERE IS A REASONABLE PROBABILITY THAT, HAD COUNSEL RAISED A SUFFICIENCY OF EVIDENCE CLAIM ON DIRECT APPEAL, THE RESULTS OF THE PROCEEDING WOULD BE DIFFERENT."(PG. 19:65). THEREFORE, APPLICANT HAS NOT "FAILED TO PROVE THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL."(PG. 19:67). THUS, APPLICANT RESPECTFULLY DIFFERS WITH THE STATE'S RECOMMENDATION IN ITS CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, THAT APPLICANT'S NINETH GROUND FOR RELIEF BE DENIED."(PG. 19:68).

*CRUEL AND UNUSUAL PUNISHMENT* (GROUND TEN)

APPLICANT AGREES IN FULL WITH THE STATE'S CONCLUSIONS OF LAW, WHICH THE COURT ADOPTED AS ITS OWN, REGARDING THE RECOMMENDATION THAT "APPLICANT'S TENTH GROUND FOR RELIEF BE GRANTED."(PG. 19-20:69-72).

## III.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, APPLICANT PRAYS THAT THIS COURT, IN THE INTEREST OF JUSTICE, GIVE ALL OF APPLICANT'S GROUNDS FOR RELIEF SETFORTH IN WRIT OF HABEAS CORPUS A DE NOVO JUDICIAL REVIEW. APPLICANT CONCEDES THAT EACH IMPROPER FINDINGS OF FACT SUBMITTED BY THE STATE, ADOPTED BY THE COURT, THATS IN CONTENTION, IS CONTESTED WITH PROPER FACTS BY APPLICANT. ALSO, APPLICANT ASSERTS THAT EACH CONCLUSIONS OF LAW SUBMITTED BY THE STATE, ADOPTED BY THE COURT, THATS IN CONTENTION TO LAW, IS CONTESTED WITH PROPER LAWS TO FACTS. THUS, FOR THE REASONS SETFORTH ABOVE, APPLICANT RESPECTFULLY DIFFERS WITH THE STATE'S RECOMMENDATIONS, WHICH THE COURT ADOPTED AS ITS OWN, AND RESPECTFULLY REQUESTS THAT THIS COURT, IN THE INTEREST OF JUSTICE, GRANTS HIS REQUESTS AND

HOLDS A DE NOVO JUDICIAL REVIEW OF ALL APPLICANT'S GROUNDS FOR RELIEF, AND GRANTS MERITORIOUS GROUND PERMITTING APPLICANT WITH RELIEF SOUGHT.

EXECUTED ON THIS THE 4TH DAY OF AUGUST, 2015.

RESPECTFULLY SUBMITTED,

X _Julis Perales_
JULIS PERALES, PRO-SE
TDCJ-ID# 1449158
ALFRED D. HUGHES UNIT
RT. 2 BOX 4400
GATESVILLE, TEXAS 76597

## INMATE DECLARATION

I, JULIS EDWARD PERALES, TDCJ-ID # 1449158, BEING PRESENTLY INCARCERATED IN THE ALFRED D. HUGHES UNIT, OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE – INSTITUTIONAL DIVISION IN CORYELL COUNTY, TEXAS, VERIFY AND DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENT ARE TRUE AND CORRECT.

EXECUTED ON THIS THE 4TH DAY OF AUGUST, 2015.

RESPECTFULLY SUBMITTED,

X _Julis Perales_
JULIS PERALES, PRO-SE

37